```
                    UNITED STATES DISTRICT COURT
                        DISTRICT OF VERMONT


MARK SMITH,                          :
     Plaintiff                       :
                                     :
     v.                              :   Civil No. 1:05CV106
                                     :
UNITED STATES MARSHALS SERVICE,      :
UNITED STATES DEPARTMENT OF          :
JUSTICE, and UNITED STATES OF        :
AMERICA,                             :
     Defendants                      :
_____ :
```

RULING ON DEFENDANT'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
(Paper 18)

Background

As a result of this Court's prior rulings in this matter, familiarity with which is presumed, the sole remaining issue is the plaintiff's claim that the defendant's actions violated his rights under the Rehabilitation Act, 29 U.S.C. § 791.  See, e.g., Ruling on Def.'s Mot. for S. J. (Doc. 16) (Oct. 19, 2005) (relying on a related case presenting similar claims, the Court dismissed all plaintiff's counts, with the exception of his Rehabilitation Act claim, as barred by res judicata).

The Court may grant summary judgment only where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party has an initial burden of informing the

1

Court of the basis for his motion for summary judgment and of identifying the absence of a genuine issue of material fact. See, e.g., Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000). Where, as here, a motion for summary judgment is supported by affidavits and other documentary evidence, however, the opposing party must set forth specific facts showing there is a genuine, material issue for trial. See Forsyth v. Fed. Employment & Guidance Serv., 409 F.3d 565, 569-70 (2d Cir. 2005); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 526 (2d Cir. 1994).

Stated another way, a court's role when considering a motion for summary judgment is to determine whether there are genuine unresolved issues of material fact to be tried. See, e.g., Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004); Gibson v. Am. Broad. Co., Inc., 892 F.2d 1128, 1132 (2d Cir. 1989). Only disputes over material facts which might affect the outcome of the suit under the governing law preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Moreover, a dispute of fact is not "genuine," and does not preclude the entry of summary judgment, if the evidence is not sufficient to permit a jury to find in the moving party's favor. Id. "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could

reasonably find for the plaintiff." Id. at 252; see Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 574 (2d Cir. 2005).

Plaintiff Mark Smith maintains AKAL Security, Inc.'s (hereinafter "AKAL") June 2002 decision to terminate his employment as a Court Security Officer (hereinafter referred to as "CSO") violated his rights under the Rehabilitation Act. According to AKAL, Smith was terminated because his inadequately controlled diabetes indicated he is not medically qualified to perform the essential functions of a CSO.

Dr. John Barson is a reviewing physician with Federal Occupational Health, Enforcement Medical Programs. In that capacity, he has conducted occupational medical reviews for several federal agencies, including the U.S. Marshals Service's CSO program. See Barson Decl. (appended as Ex. D to Paper 19) at para. 2.

According to Dr. Barson, although he has conducted several hundred medical and records examinations of individuals with diabetes, he has "recommended medical disqualification for only a small percentage of individuals" because "[i]n most cases, an individual's diabetes would be under sufficient control so as to allow him or her to continue working as a CSO." Barson Decl. at para. 3. Generally, diabetes is not automatically disqualifying for CSO employment; it is a condition which is evaluated on a

case-by-case basis.  In fact, there are individuals currently serving as CSOs who are diabetic.  <u>See</u> Decl. of Judge Jane R. Roth (appended to Paper 19 as Ex. F) (current chair of the U.S. Judicial Conference Committee on Security and Facilities).

Although the plaintiff disputes Dr. Barson's ultimate determination, he does not appear to dispute the facts which underlie Barson's conclusion.  As plaintiff's medical expert summarizes:

> A Medical Review Form dated 9/24/01 and signed by Dr. Miller indicated that a medical determination could not be made due to complete examination requirements.  The requested additional documentation included details regarding his history of type 2 diabetes including a report from his treating physician, a detailed explanation for the use of the medication Elavil, and a report of an eye examination.  A letter dated 4/23/02 by his optometrist, Dr. Douglas Wilson documented normal visual acuity, color vision, and no diabetic retinopathy.  A letter dated 5/9/02 from his primary physician, Mark Stickney, M.D. indicated that Mr. Smith enjoyed an active lifestyle without exercise induced symptoms, that his medical conditions were being closely monitored with continual adjustments, and included the opinion "overall I feel Mark is qualified to perform all aspects of current job, pending results of CEST."  The latter comment refers to a recommendation from [sic] that he undergo an [sic] cardiac exercise stress test (CEST).  The the [sic] regards to his diabetes, the letter further states that his most recent hemoglobin A1c was 8.9, increased from 7.0, but that he was working on lifestyle measures to improve this.  It also clarified that the medication Elavil was used for control of symptoms of diabetic peripheral neuropathy.

Expert Witness Disclosure of Dr. Richard Christensen (appended to Paper 26 as Ex. 1) at 12-13.

Upon subsequent review of the plaintiff's medical record, Dr. Barson found Mr. Smith's inadequately controlled hemoglobin A1c of 8.9% and the evidence of diabetic peripheral neuropathy indicated Smith was not medically qualified to perform the essential job functions of a CSO and that he was predisposed to the development of additional complications of diabetes.  Dr. Barson states:

> I concluded that Mr. Smith was not medically qualified to perform the essential functions of the CSO position due to inadequately controlled diabetes.  I based that conclusion on my review of the information contained in Mr. Smith's annual medical examination and the information he provided in response to our request for additional information regarding his diabetic condition. . . .
>
> Uncontrolled diabetes can result in visual disturbances, cognitive disorders, and long-term medical complications.  In addition, the conditions of work for CSO (unpredictable levels of physical and psychological stress, variable work schedule, and unplanned mealtimes with possibly skipped meals) risked exposing Mr. Smith to the development of hypoglycemia, which impairs cognitive functioning (attention, concentration, level of consciousness).  It is impossible to predict with certainty whether or when an individual in Mr. Smith's condition will experience these complications.  Allowing Mr. Smith to continue working as a CSO would have placed at significant risk the safety of the courthouse to which [he] was assigned, the people who work at that courthouse, and the public.

Barson Decl. at 11-12.

## Discussion

As a threshold argument, the government maintains the plaintiff has failed to exhaust his administrative remedies, and

therefore his Rehabilitation Act claim is barred.  See, e.g., Churchill v. Star Enters., 183 F.3d 184, 190 (3d Cir. 1999). This argument, already dismissed under the particular facts of the similar matter of Bush v. Gonzales, requires no further consideration.  See Bush v. Gonzales, No. 1:05CV108, Ruling on Def.'s Mot. to Dismiss or in the Alternative, for Summ. J., slip op. at 3 (D. Vt. Dec. 12, 2005) (finding the exhaustion argument "curious" in light of an undisputed record showing the defendants instructed the plaintiff that, as a "contractor" he had no right to utilize EEO procedures).

The defendants' exhaustion argument notwithstanding, the Court finds the government is entitled to summary judgment on the merits of the plaintiff's remaining Rehabilitation Act claim. The Rehabilitation Act bars discrimination based on "disability." See 29 U.S.C. § 794(a).  "A plaintiff makes out a prima facie case of discrimination under the Act by showing: 1) []he is a handicapped person under the Act; 2) []he is otherwise qualified to perform h[is] job; 3) []he was discharged because of h[is] handicap; and 4) the employer is a recipient of Federal financial assistance."  Heilweil v. Mt. Sinai Hosp., 32 F.3d 718, 722 (2d Cir. 1994).

Whether one is "handicapped" or "disabled" is a two-pronged inquiry.  "It must first be determined whether a plaintiff has a physical or mental impairment.  If so, it must then be decided

whether such impairment substantially limits one or more of that person's major life activities." Id.  Plaintiff has not made a prima facie showing that his diabetic condition "substantially limits" one or more of his major life activities and therefore has not demonstrated he is disabled under the Rehabilitation Act.

As defined in the Americans with Disabilities Act, and as applied to actions under the Rehabilitation Act, an impairment which "substantially limits" is one which is "substantial" or "considerable."  Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 196 (2002).  Such an impairment "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  Id. at 198.

Thus, "a medical diagnosis of an impairment" alone is insufficient to prove protected disability status; one must also offer evidence that as a result of the claimed limitation, he cannot "perform a major life activity that the average person in the general population can perform."  29 C.F.R. § 1630.2 (j)(1)(I).  Moreover, "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity" within the meaning of the Rehabilitation Act. Sutton v. United Air Lines, Inc., 527 U.S. 471, 482-83 (1999).

Using the applicable ADA standard, the Supreme Court has further explained:

7

> By its terms, the ADA allows employers to prefer some
> physical attributes over others and to establish
> physical criteria.  An employer runs afoul of the ADA
> when it makes an employment decision based on a
> physical or mental impairment, real or imagined, that
> is regarded as substantially limiting a major life
> activity.  Accordingly, an employer is free to decide
> that physical characteristics or medical conditions
> that do not rise to the level of an impairment – such
> as one's height, build, or singing voice - are
> preferable to others, just as it is free to decide that
> some limited, but not <u>substantially</u> limiting,
> impairments make individuals less than ideally suited
> for a job.

<u>Id.</u> at 490-91 (emphasis in original).

That reasoning applies here.  AKAL and the Marshals Service have determined that, to ensure effective court security, its CSOs must have baseline physical attributes, including dependable alertness and the ability to respond to emergencies.  In this case, the particulars of plaintiff's diabetic condition caused the defendants to determine that he could not meet required physical requirements.  According to Dr. Barson, blood tests suggested that the plaintiff could be at risk for impaired alertness at times of stress or irregular work or meal schedule.  Moreover, the suggestion of diabetic peripheral neuropathy brings into question plaintiff's ability to effectively and physically respond to an emergency situation.

The fact that AKAL has found the plaintiff unsuitable to serve as a CSO, in and of itself, does not demonstrate the existence of an impairment which otherwise substantially limits his major life activity of working, thereby bringing him within

8

the protections afforded by the Rehabilitation Act.  See, e.g., Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 523 (1999) ("to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job"); Heilweil, 32 F.3d at 724 (plaintiff deemed "not handicapped" under the Rehabilitation Act "[b]ecause her asthmatic condition did not substantially limit a major life activity - either her ability to breathe or work"); Muller v. Costello, 187 F.3d 298, 313 (2d Cir. 1999) ("The position of correctional officer constitutes a single, particular job, and a limitation on a single, particular job cannot constitute a substantial limitation of the major life activity of working."); Daley v. Koch, 892 F.2d 212, 216 (2d Cir. 1989) (individual "found to hold personality traits that made him unsuitable" to be a police officer was not handicapped "simply because he was rejected for employment").  Courts have specifically found that diabetic individuals such as the plaintiff are not "disabled" within the meaning of the Rehabilitation Act.  See, e.g., Sepulveda v. Glickman, 167 F. Supp. 2d 186, 191 (D.P.R. 2001) ("taking into account the availability of corrective and mitigating measures, Plaintiff's diabetes does not constitute a substantial limitation to any major life activity").

The plaintiff also maintains the defendants' "perception" of him as disabled unlawfully resulted in his termination.  "An

9

employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general." Chandler v. City of Dallas, 2 F.3d 1385, 1393 (5th Cir. 1993).  The record contains no support for plaintiff's suggestion that the defendants perceived him to be substantially disabled because he is diabetic; therefore, the Court rejects this argument as providing a basis for challenging the defendant's determination.  Id.

The Motion For Summary Judgment is GRANTED.  The Motion to Dismiss is DENIED as moot.

SO ORDERED.

Dated at Brattleboro, Vermont, this 7th day of February, 2006.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge